UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MILDRED B. MENDELSON,  :
                Plaintiff,  :
v.  :
    :  **OPINION AND ORDER**
JONATHAN J. EVANS, individually, and in his  :
official capacity as a Police Officer; GREGORY  :  20 CV 2583 (VB)
E. WALZ, individually and in his official  :
capacity as a Police Officer; and TOWN OF  :
POUND RIDGE, NEW YORK,  :
                Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Mildred B. Mendelson brings this action under 42 U.S.C. § 1983 and New York state law against the Town of Pound Ridge, Police Officer Jonathan J. Evans ("Officer Evans"), and Detective Gregory E. Walz ("Detective Walz," and, together with Officer Evans, the "individual defendants"). Plaintiff brings a claim for excessive force, as well as state-law claims for battery and prima facie tort.

    Now pending are defendants' motion for partial summary judgment (Doc. #57), and plaintiff's cross-motion for sanctions under 28 U.S.C. § 1927. (Docs. ##71, 72).

    For the following reasons, the partial summary judgment motion is GRANTED IN PART and DENIED IN PART, and the sanctions motion is DENIED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

    The parties have submitted memoranda of law, declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

1

I. <u>Altercation at Pound Ridge Police Department</u>

On April 11, 2019, plaintiff, a then-seventy-two year old woman, visited the Pound Ridge Police Department to lodge a formal complaint regarding Officer Evans. Plaintiff claims Officer Evans and Detective Walz—the two police officers working the front desk of the Police Department building at the time—ignored plaintiff's complaint, laughed at her, and then "bodily ejected" plaintiff out of the building "with the application of excessive and deadly force," before arresting plaintiff and charging her with disorderly conduct. (<u>See</u> Doc. #71-4 ("PSMF") ¶¶ 35, 47, 54, 57).

Officer Evans's body camera recording reflects that shortly after the altercation, Pound Ridge Town Supervisor Kevin Hansan ("Supervisor Hansan") congratulated the individual defendants for their conduct in neutralizing plaintiff.

Plaintiff's sworn statements in her affidavits as well as her contemporaneous emails reflect that in the days that followed the altercation and arrest, she filed a formal complaint with Police Chief David Ryan ("Chief Ryan"). According to plaintiff, Chief Ryan refused to accept the complaint and instead described the individual defendants' conduct as "justified." (PSMF ¶ 68).

II. <u>Portale Randazzo's Potential Conflict-of-Interest</u>

Plaintiff's cross-motion for sanctions arises out of the purportedly improper representation of defendants by their former counsel, James A. Randazzo, Esq., and his law firm, Portale Randazzo, LLP ("Portale Randazzo").

Plaintiff and Portale Randazzo agree that on April 14, 2019, plaintiff left a voicemail message with Portale Randazzo in which she sought a consultation to discuss her altercation and

arrest. However, the parties dispute the subsequent interactions between plaintiff and the named partners of Portale Randazzo, Mr. Randazzo and Richard A. Portale, Esq.

Plaintiff contends that on April 16, 2019, Mr. Randazzo returned plaintiff's call and spoke with her for thirty minutes. Plaintiff insists that during this call, she offered additional background on the case, disclosed "litigation and case strategy," and discussed relevant documents in her possession. (Doc. #71-2 ("Mendelson Aff.") ¶¶ 21–24). Plaintiff claims that later that day, she dropped off a package of relevant documents at the Portale Randazzo office building for Mr. Randazzo's review. Plaintiff contends she then met with Mr. Randazzo in-person at the same office building on April 18, 2019, at which time Mr. Randazzo informed her he could not represent her. In support of this account of the facts, plaintiff offers her sworn statements, cell phone logs reflecting outgoing calls to and incoming calls from Portale Randazzo, as well the sworn affidavit of her husband, who corroborates plaintiff's account.

Mr. Randazzo and Mr. Portale contend it was Mr. Portale, not Mr. Randazzo, who returned plaintiff's call on April 16, 2019. Mr. Portale offers sworn statements that his conversation with plaintiff was limited solely to plaintiff's arrest, not a civil lawsuit, and that a planned follow-up visit in person at the Portale Randazzo office was scheduled, but ultimately never took place. Mr. Randazzo maintains he had never spoken with plaintiff, and both attorneys deny speaking with each other about plaintiff or the instant case at all. Both attorneys maintain that a search of their firm's databases did not uncover any file in connection with plaintiff as a prospective client.

On March 10, 2020, Mr. Randazzo and Portale Randazzo were retained by defendants' insurance carrier to represent defendants in this action. Plaintiff avers it was not until some time in February 2022 that she recalled her prior interactions with Portale Randazzo, at which point

she informed her attorney in this action, who, in turn, demanded that Mr. Randazzo withdraw due to a potential conflict of interest. Although Mr. Randazzo maintained there was not a conflict, he and his law firm withdrew as defense counsel "out of an abundance of caution" on March 10, 2022. (Doc. ##67, 76-1 ¶ 26).

## DISCUSSION

I.     Motion for Partial Summary Judgment

     A.     Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[1]

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to demonstrate the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[1]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

If the non-moving party fails to make a sufficient showing on an essential element of her case on which she has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for her. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

B.    Section 1983 Claim Against the Town of Pound Ridge

Pound Ridge argues plaintiff's Section 1983 claim against it must be dismissed because plaintiff fails as a matter of law to show ratification of the individual defendants' actions.[2]

---

[2]    Plaintiff failed to respond to defendants' arguments addressing the additional theories of Monell liability pleaded in the complaint, specifically, Pound Ridge's alleged failure to train its officers and implement policies to prevent the deprivation of plaintiff's rights. Accordingly, to the extent plaintiff asserts her Monell claim on either theory, the Court deems the claim abandoned. Cowan v. City of Mount Vernon, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) (granting summary judgment on claims because of plaintiff's failure to respond to defendant's arguments).

The Court agrees.

Under <u>Monell v. Department of Social Services</u>, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." 436 U.S. 658, 694 (1978). Thus, to assert a Section 1983 claim against a municipality, the plaintiff must show the existence of an official policy or custom causing injury and a direct causal connection between the policy or custom and the deprivation of a constitutional right. <u>Jones v. Town of East Haven</u>, 691 F.3d 72, 80–81 (2d Cir. 2012).

A plaintiff may show that a constitutional violation represents the "policy or custom" of the municipality under <u>Monell</u> by demonstrating that "a policymaking official ordered or ratified the employee's actions—either expressly or tacitly." <u>Jones v. Town of East Haven</u>, 691 F.3d at 81. A <u>Monell</u> claim premised on ratification due to the inaction of policymakers requires showing that "the unconstitutional conduct which the municipal policymaker ratified was part of a pattern of constitutionally offensive acts, rather than an isolated event." <u>Wilson v. County of Ulster</u>, 2022 WL 813958, at *14 (N.D.N.Y. Mar. 17, 2022) (citing <u>Batista v. Rodriguez</u>, 702 F.2d 393, 398 (2d Cir. 1983)). "Where, however, [<u>Monell</u>] liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified the subordinate's decision and the basis for it." <u>Davis v. City of New York</u>, 75 F. App'x 827, 829 (2d Cir. 2003) (summary order).

Here, plaintiff contends Supervisor Hansan and Chief Ryan each independently ratified the conduct of the individual defendants—Supervisor Hansan by "congratulating" the individual defendants for a job well done immediately after the altercation, and Chief Ryan by concluding the individual defendants' conduct was justified. (PSMF ¶¶ 66–70).

6

As an initial matter, plaintiff does not adduce any evidence from which a rational juror could infer that Supervisor Hansan or Chief Ryan ratified any unconstitutional basis for the individual defendants' conduct.  See Best Payphones, Inc. v. Dobrin, 410 F. Supp. 3d 457, 486 (E.D.N.Y. 2019) (final policymaker's letter informing plaintiff of decision to remove plaintiff's pay phones raised inference the policymaker "approved [the] act, [but] it is not evidence that [he] approved a retaliatory act" for the purpose of a First Amendment retaliation claim against the municipality).  To the contrary, the admissible evidence suggests only that each policymaker approved of the individual defendants' conduct because they believed that employing some degree of force to restrain plaintiff was necessary to de-escalate the situation and minimize the risk of future violence.  (See, e.g., "Plaintiff's Exhibit B2" (Officer Evans's body camera recording showing Supervisor Hansan discussing other near-violent outbursts by plaintiff in the past); Mendelson Aff. ¶ 54 (relaying that Chief Ryan "described the Police conduct toward me as justified")).

In addition, plaintiff fails to raise a genuine issue of material fact that either Supervisor Hansan or Chief Ryan "ratified" anything more than the single, isolated alleged constitutional violation at issue in this case.  That is, plaintiff does not point to any evidence in the record from which a rational juror could infer that the purportedly excessive force employed by the individual defendants was part of a recurring pattern or practice of excessive force in Pound Ridge.  See Ocasio v. City of Canandaigua, 513 F. Supp. 3d 310, 324 (W.D.N.Y. 2021) (police chief's declaration at press conference that officer's conduct had been "within the policies and procedures of [the] department" not sufficient on its own to maintain a Monell claim).

Accordingly, plaintiff's Section 1983 claim against the Town of Pound Ridge must be dismissed.[3]

### C. State-Law Claims Against the Individual Defendants

The individual defendants argue they are entitled to summary judgment on plaintiff's state-law claims against them because there is no genuine issue of fact that plaintiff failed to file a timely notice of claim with the Town of Pound Ridge.

The Court disagrees.

Under New York law, no action may proceed against a municipality, or an employee or officer thereof, unless the plaintiff has served a notice of claim upon the municipality as required by New York General Municipal Law Section 50-e. See N.Y. Gen. Mun. Law § 50-i(1)(a). In suits against individual municipal employees or officers but not against the municipality, Section 50-e requires a notice of claim to be filed only when the municipality is under a statutory obligation to indemnify the individual employee or employees being sued. Id. § 50-e(1)(b).

New York generally excludes intentional torts from the types of claims that a municipality is obligated to indemnify. N.Y. Gen. Mun. Law § 50-j(1). The Town of Pound Ridge Code provides that Pound Ridge is only obligated to indemnify its employees for judgments or claims against them "provided that the act or omission from which [the] judgement or claim arose occurred while the employee was acting within the scope of his public employment or duties." Town of Pound Ridge Code § 17A-1. This duty to indemnify "[does] not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee." N.Y. Pub. Off. Law § 18(4)(b); see also Hamilton v. County of

---

[3] Because the Court concludes plaintiff's ratification theory fails on the merits, it declines to address defendants' argument that plaintiff cannot introduce a new theory of liability in her opposition to the summary judgment motion that was not pleaded in her complaint.

Onondaga, 2018 WL 4554496, at *18 (N.D.N.Y. Sept. 21, 2018) ("[I]ntentional torts are generally not considered conduct within the scope of employment.").

Here, plaintiff asserts state-law claims against the individual defendants for battery and prima facie tort, both of which are intentional torts, and thus not among the types of claims that Pound Ridge is obligated to indemnify as a matter of law.  See Kavazanjian v. Rice, 2008 WL 5340988, at *6 (E.D.N.Y. Dec. 22, 2008) (state-law tort claims for assault and battery "would, by definition, have constituted intentional wrongdoing," and thus "are not procedurally barred by [plaintiff's] failure to file a Notice of Claim"); Hamilton v. County of Onondaga, 2018 WL 4554496, at *18 (holding that county did not intend to indemnify individual county employees with respect to alleged prima facie tort claim).

Moreover, even putting the labels of her claims aside, plaintiff has shown there is a genuine issue of fact whether the individual defendants' conduct constituted "intentional wrongdoing or recklessness" that would fall outside the scope of their employment.  Indeed, plaintiff offers her own sworn statements that Officer Evans laughed at her before aggressively pushing her out of the police station, resulting in plaintiff banging her head into a refrigerator, none of which falls within the scope of the individual defendants' employment as police officers. "Failure to serve a notice of claim, therefore, is not grounds for dismissing these intentional tort claims."  Hamilton v. County of Onondaga, 2018 WL 4554496, at *18.

Accordingly, plaintiff's state-law claims against the individual defendants may proceed.

II.     Cross-Motion for Sanctions

A.     Standard of Review

28 U.S.C § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In addition, a party may also move for attorneys' fees pursuant to the Court's inherent authority to sanction any party that "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). This authority is "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. at 43.

In deciding a motion for sanctions under either authority, the Court must make any findings "with reasonable specificity in terms of the perceived misconduct and the sanctioning authority." MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996). Any decision to issue such sanctions "lies within this Court's broad discretion." United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018).

"[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both." See Enmon v. Prospect Cap. Corp., 675 F.3d 138, 144 (2d Cir. 2012).

Thus, to impose sanctions under either authority, the moving party must present "clear evidence" that the offending party's claims or actions during the litigation were "entirely without color," and the conduct was undertaken in "bad faith—that is, motivated by improper purposes such as harassment or delay." Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000). "The test

is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." Sierra Club v. U.S. Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985).

"To make a finding of bad faith, a court must (1) find that the challenged actions were taken for improper purposes, such as harassment or delay; and (2) provide a high degree of specificity in the factual findings." United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d at 483 (citing Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986)).

B. Analysis

Plaintiff argues that sanctions are appropriate under either Section 1927 or the Court's inherent authority because Mr. Randazzo acted in bad faith by representing defendants in an action that is materially adverse to plaintiff, a one-time prospective client of Mr. Randazzo, regarding the same matter.

The Court disagrees.

In addressing questions of disqualification or withdrawal of an attorney, which are analogous to the questions posed by this cross-motion, "federal courts are guided, but not bound, by the State's Code of Professional Conduct, and yet courts look to the Code, and in some instances even seek guidance from state common law." Zalewski v. Shelroc Homes, LLC, 856 F. Supp. 2d 426, 432 (N.D.N.Y. 2012).  However, "such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification," or, in this case, sanctions.  Id.

Rule 1.18 of the New York Rules of Professional Conduct forbids an attorney from "represent[ing] a client with interests materially adverse to those of a prospective client," that is, "a person who consults with a lawyer about the possibility of forming a client-lawyer

11

relationship," but only if "the lawyer received information from the prospective client that could be significantly harmful to that person in the matter."

The rule does not define "significantly harmful" information, but it has been interpreted to include: a party's settlement strategy; its "bottom line" in settlement; its "views and impressions of [the] litigation;" and its "opinions and impression of even public documents and facts." Benevida Foods, LLC v. Advance Mag. Publishers Inc., 2016 WL 3453342, at *11 (S.D.N.Y. June 15, 2016). The types of information that are not usually "significantly harmful" include: information that is public; information regarding the "history of the dispute;" and information "likely to be revealed at deposition or in other discovery." Id.

Here, the Court finds there is some evidence plaintiff was a "prospective client" of Portale Randazzo, but there is no evidence to suggest Mr. Randazzo "received information from [plaintiff] that could be significantly harmful to [her] in the matter." N.Y. Rules of Pro. Conduct 1.18. Indeed, the only potential exchanges of information between plaintiff and Mr. Randazzo with any support in the record are plaintiff's retelling of "the history of the dispute," as reflected in her voicemail message, and plaintiff's disclosure of documents "likely to be revealed in discovery," like the package of documents plaintiff claims she left for Mr. Randazzo's review. Benevida Foods, LLC v. Advance Mag. Publishers Inc., 2016 WL 3453342, at *11. Both categories of information are quintessentially "not significantly harmful." Id.

To be sure, plaintiff lists myriad types of harmful information she claims to have shared with Mr. Randazzo, from litigation strategy to "bottom-line" settlement numbers, but without more, such "generalized assertions" fall far short of the "clear evidence" necessary to make a finding of bad faith. See Jam. Pub. Serv. Co. v. AIU Ins. Co., 92 N.Y.2d 631, 638 (1998) (naked assertion counsel had "access to confidences and secrets" insufficient to order disqualification—

a movant "must at a minimum provide the motion court with information sufficient to determine whether there exists a reasonable probability [that the applicable ethical rule] would be violated").

Similarly, plaintiff offers no evidentiary support for her assertion that defendants' "early motion was facilitated precisely because of the pre-suit information [Mr. Randazzo] gained from [plaintiff]." (Doc. #77-1 ¶ 34).  To the extent plaintiff refers to defendants' motion for judgment on the pleadings filed on April 28, 2020 (Doc. #8)— the only other motion filed by defendants in this case—that motion was narrowly tailored to address plaintiff's Monell claim.  In addition, plaintiff offers no evidence to suggest that any of the information she claims to have shared with Mr. Randazzo bears any relevance to Pound Ridge's customs or policies, such that it would have affected defendants' decision to file the motion one way or the other.

Plaintiff's accusation also ignores that on May 14, 2020, defendants withdrew the motion upon Mr. Randazzo's own recommendation, thereby sparing plaintiff from additional expense. (Doc. #19).  And on that same day, the Court held a case management conference in which plaintiff's counsel admitted on the record that he had not done any work in responding to the motion because he was waiting on the Court's decision on plaintiff's own motion to remand this case back to state court.  Accordingly, for plaintiff to now rely upon defendants' motion for judgment on the pleadings as evidence of unreasonable or vexatious behavior itself verges on unreasonable and vexatious behavior.

Finally, plaintiff offers no evidence to support her assertion that defendants deliberately strung plaintiff along in settlement negotiations due to their knowledge of her "bottom-line" settlement number.  To the contrary, plaintiff's conclusory, self-serving statement regarding the disclosure of her settlement strategy—offered for the first time in reply to defendants' opposition

to the cross-motion for sanctions—is outweighed by the repeated representations from plaintiff's counsel on the record that plaintiff, at least as much as defendants, is responsible for the impasse in settlement negotiations. For example, during another another case management conference on May 17, 2021, the Court asked the parties about the status of their settlement negotiations, and plaintiff's counsel candidly acknowledged that plaintiff "has been relatively intractable in her position" on settlement. Accordingly, the Court declines to make any findings attributing the parties' failed settlement negotiations to anything other than the strongly held positions on both sides of this dispute.

Accordingly, plaintiff's cross-motion for sanctions must be denied.[4]

---

[4] Evidence in the record also suggests that an attorney-client relationship between plaintiff and Portale Randazzo arguably formed when plaintiff relied on Mr. Randazzo's alleged "advice" to demand that the Pound Ridge Police Department retain all video recordings of the altercation. (Mendelson Aff. ¶ 25). See also Restatement (Third) of the Law Governing Lawyers § 14 (2000) ("In many such instances, the lawyer's conduct constitutes implied assent."). In contrast to an attorney's obligations to a prospective client, the "successive representation rule" is more stringent, providing that "an attorney may be disqualified if he or she represents a party adverse to his or her former client in the same or substantially related matter, and he or she merely had access to, or was likely to have had access to, relevant privileged information in the course of his [or her] prior representation of the client." Benevida Foods, LLC v. Advance Mag. Publishers Inc., 2016 WL 3453342, at *11 n.12. However, the Court need not make a finding or conclusion as to whether a "de facto" attorney-client relationship arose (Doc. #71 ¶ 21), because it concludes that even if there was an attorney-client relationship, plaintiff has still failed to show any "clear evidence" of bad faith to warrant an award of sanctions.

**CONCLUSION**

The motion for partial summary judgment is GRANTED with respect to the Section 1983 claim against the Town of Pound Ridge.

The motion for partial summary judgment is DENIED with respect to the state-law claims against the individual defendants.

The cross-motion for sanctions is DENIED.

The Court will conduct a case management conference on **August 25, 2022, at 10:00 a.m.,** at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what good faith efforts they have made and will make to settle this case. The conference will be held in person at the White Plains courthouse, Courtroom 620.

The Clerk is instructed to terminate the Town of Pound Ridge, New York, as a defendant in this action, and to terminate the pending motions. (Docs. ## 57, 71, 72).

Dated:  July 20, 2022
         White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge